Surisa E. Rivers, State Bar No. 250868
 *surisa@riverslawoffice.org*
SURISA RIVERS LAW OFFICE
2910 West Broadway, Suite 100B
Los Angeles, California 90041
Tel: (323) 312-5320 / Fax: (323) 617-3190

Christopher H. Knauf, State Bar No. 185180
 *ck@goodlaw.biz*
Alexandra M. Robertson, State Bar No. 298637
 *alex@goodlaw.biz*
KNAUF ASSOCIATES
2001 Wilshire Blvd, Suite 320
Santa Monica, California 90403
Tel: (310) 829-4250 / Fax: (310) 622-7263

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN MURILLO, an individual,<br><br>        Plaintiff,<br><br>   v.<br><br>NATIONAL UNIVERSITY, a California non-profit corporation; NATIONAL UNIVERSITY SYSTEM, a business entity of unknown form; and DOES 1-10, inclusive,<br><br>        Defendants. | Case No.  2:16-cv-1240<br><br>**COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES; DEMAND FOR JURY TRIAL**<br>1. Americans With Disabilities Act (42 U.S.C. §§ 12181 *et seq.*);<br>2. Rehabilitation Act of 1973 (29 U.S.C. §§ 794 *et seq.*);<br>3. California Unruh Civil Rights Act (Cal. Civil Code §§ 51 *et seq.*);<br>4. Negligence/Negligence Per Se;<br>5. Intentional Infliction of Emotional Distress. |

### INTRODUCTION

Plaintiff JOHN MURILLO hereby alleges the following facts and submits the following claims for relief against Defendants NATIONAL UNIVERSITY, NATIONAL UNIVERSITY SYSTEM, and DOE Defendants 1 through 10:

1.      Plaintiff John Murillo is a candidate in Defendant National University's master's degree and teacher credentialing program. Prior to enrolling at National University in 2010, Mr. Murillo worked as an educator for over ten years. Mr. Murillo already holds a Master of Science Educational and Instructional Technology degree from National University, and has successfully completed all coursework for his Master of Education degree with high grades. Mr. Murillo enrolled in National University for the sole purpose of earning his teaching credential in order to pursue a full-time career dedicated to teaching English to high school students.

2.      Mr. Murillo also has a learning disability that impacts his ability to understand and recall auditory information, as well as his ability to process visual and spatial information. This learning disability interferes with his ability to read aloud and understand complex oral instructions, as well as his ability to read and comprehend complex written material. Because of his learning disability, Mr. Murillo requires certain academic accommodations for academic classes, including his master's degree and teacher credentialing program and National University.

3.      From approximately 2010 into 2015, however, National University failed to provide Mr. Murillo with the disability accommodations that he needed during the clinical practice coursework in student teaching, thereby unnecessarily hindering his academic progress, delaying his completion of the teacher credentialing program, and resulting in substantial financial loss and emotional distress.  Furthermore, National University's faculty and/or administration not only failed to accommodate his disabilities, but also took retaliatory action when he requested and sought the provision of reasonable accommodations for his student teaching clinical studies.  As a result,

Defendants denied him a full and equal opportunity, a level playing field, and full enjoyment and benefits of the programs, services, and activities of National University's teacher credentialing program, resulting in substantial harm.

4.     Accordingly, Mr. Murillo alleges that Defendants failed to provide reasonable accommodations, including provision of needed auxiliary aids and services, and failed to reasonably modify its policies, thereby violating Title III of the Americans with Disabilities Act ("ADA" or "Title III") (42 U.S.C. §§ 12181 *et seq.*) and Section 504 of the Rehabilitation Act ("Rehabilitation Act" or "Section 504") (29 U.S.C. §§ 794 *et seq.*).  As alleged herein, National University also violated the anti-retaliation provisions of the ADA and Section 504 (42 U.S.C. §§ 12203 *et seq*; 29 U.S.C. §§ 794a *et seq.*).  Defendants also violated California's Unruh Civil Rights Act ("Unruh Act") (Cal. Civil Code §§ 51 *et seq.*), and committed common law negligence and negligence per se, as well as intentional infliction of emotional distress.  Mr. Murillo seeks damages, declaratory, and injunctive relief.

## JURISDICTION AND VENUE

5.     As this action arises in part under the Americans with Disabilities Act and Section 504 of the Rehabilitation Act, this Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§ 1331 and 1343. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

6.     Venue is proper in the Central District of California under 28 U.S.C. § 1391(b), as Defendant is deemed to reside in this judicial district by virtue of their business operations here, the events involving Plaintiff occurred in this judicial district, and Defendants are subject to this court's jurisdiction with respect to this action.

## PARTIES

7.     At all times relevant to this action, Plaintiff JOHN MURILLO has resided in the County of Los Angeles, state of California, and has had a specific learning disability, which is a permanent condition that substantially impair his visual/spatial and auditory processing skills, impacting his language comprehension and limiting his

ability to read, process information and learn. By virtue of these impairments, Mr. Murillo at all relevant times has been an "individual with a disability" within the meaning of the ADA, Section 504, and California Government Code § 12926.

8.     At all relevant times, Defendant NATIONAL UNIVERSITY ("NU") has been a non-profit corporation headquartered in San Diego County, while doing business throughout California via online correspondence courses and at campus locations, including campuses in Los Angeles County.  At all relevant times, NU has been a "public accommodation" within the meaning of the ADA (42 U.S.C. §12182) and a "business establishment" within the meaning of the Unruh Civil Rights Act (Cal. Civ. Code § 51 *et seq.*), offering educational programs to the general public for payment. At all relevant times, NU has received federal funding.

9.     Plaintiff is informed, believes, and based thereon alleges that, Defendant NATIONAL UNIVERSITY SYSTEM ("NUS") has been a California business of unknown form affiliated with and/or the parent company of Defendant National University.  At all relevant times, Defendant NUS has conducted business continuously and systematically in California through its affiliated and/or subsidiary Defendant National University.  At all relevant times, NUS has been a "person who owns, leases (or leases to), or operates a place of public accommodation" within the meaning of the ADA (42 U.S.C. §12182), and a "business establishment" within the meaning of the Unruh Civil Rights Act (Cal. Civ. Code § 51 *et seq.*), offering an online education program, as well as educational programs at campuses throughout the state of California, to the general public. At all relevant times, NUS has received federal funding.

10.     The identities of Defendants DOES 1 through 10 are unknown at this time. DOES 1 through 10 are individuals or entities who also own, operate, lease, and/or lease to National University, and are in some manner responsible for the violations of law alleged by Plaintiff.  Plaintiff will amend this Complaint when their identities become known.

11.   At all relevant times, all Defendants and each of them were acting in concert with each other and were the agent, principal, subsidiary, representative, alter ego, officer, employer, employee, manager, director, shareholder, partner, co-conspirator, aider and abettor, and fiduciary in proximately causing the injuries and damages alleged herein.

12.   At all relevant times, all Defendants and each of them were legally responsible to Plaintiff for each of their co-Defendant's wrongs, acts and omissions alleged herein as though they had each committed each act themselves, and at all times authorized, directed, and ratified the acts and omissions of each remaining defendant.

### ADDITIONAL FACTS COMMON TO ALL CLAIMS

13.   At all relevant times, Mr. Murillo has been a graduate student enrolled in Defendants' Master of Education with a Preliminary Multiple or Single Subjects Teaching Credential degree program.

14.   Prior to enrolling at NU, Mr. Murillo had been assessed by doctors and learning disability specialists who identified his disability and necessary academic accommodations.  According to his assessments, reasonable accommodations for Mr. Murillo in traditional academic coursework include, but are not limited to:

  a. Extra time on examinations (up to double time);

  b. Scribe for exams;

  c. Computer with spell check;

  d. Private room;

  e. Note taker for lectures;

  f. Tutoring.

15.   As an undergraduate enrolled at California State University at Northridge ("CSUN"), Mr. Murillo received the above reasonable accommodations. With the aid of these accommodations, Mr. Murillo successfully completed his Bachelor of Arts degree in English Literature at CSUN.

16.   After completing his bachelor's degree, Mr. Murillo began his career in education. Mr. Murillo passed the California Basic Education Skills Test (CBEST) in

1997. For over ten years, Mr. Murillo worked variously as a part-time high school teacher and as a substitute teacher in the Los Angeles Unified School District.

17.    Mr. Murillo first enrolled in National University master's degree and teacher credential program in 2010 with the purpose of earning a master's degree in education and earning his single subject teaching credential in order to continue his career in education, with the goal of becoming a full-time high school English teacher.

18.    At the time Mr. Murillo first applied to National University, he requested disability accommodations, completing all required paperwork and submitting a letter from a learning disability specialist in CSUN's Disability Resources and Education Services office, verifying Mr. Murillo's disability as well as the reasonable accommodations Mr. Murillo received while he was a student at CSUN.

19.    At the time, National University granted Mr. Murillo's accommodations and accordingly performed well with the provision of these accommodations.

20.    Mr. Murillo successfully completed all the online coursework for his Master's Degree in Education by mid-2011.  He then enrolled in National University's Master of Science in Educational and Instructional Technology degree program, to further his learning with instructional methods that integrate technology.  Again with the aid of accommodations, Mr. Murillo successfully completed all online coursework for these two Master's degrees by the summer of 2012, with high grades and an overall grade point average of 3.9.

21.    In December 2012, Mr. Murillo successfully passed National University's student teaching screening interview and was eligible to begin his student teaching clinical coursework.

22.    However, despite his success in National University's online coursework for his two master's degrees, Mr. Murillo has struggled to complete the student teaching clinical practice program in order to earn a California teaching credential. Unlike the online coursework for which National provided Mr. Murillo with needed accommodations, during the student teaching clinical program, NU failed to provide him with any accommodations.

COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

23.     Due to his learning disability, Mr. Murillo requires accommodations in clinical coursework, including, but not limited to, clear written instructions regarding planning lessons, as well as clear written instructions regarding the classroom discipline and grading policies. Mr. Murillo also requires the use of a computer and assistive technology to aid him in preparing for lessons, and clear instructor or mentor feedback and modifications to his lesson plans and instructional presentations discussed with him before he is evaluated.

24.     In January of 2013, Mr. Murillo began National University's student teaching clinical practice program for the first time. Mr. Murillo was given a placement as a student teacher under mentor high school teachers at Valencia High School in the William S. Hart Union High School District. Mr. Murillo was also assigned a NU clinical practice faculty member to supervise his student teaching clinical studies.

25.     At the beginning of the 2013 student teaching assignment, Mr. Murillo requested reasonable accommodations from his supervising National University clinical practice professor. However, NU failed to engage in the interactive process regarding what accommodations Mr. Murillo would require to successfully participate in student teaching and failed to provide any accommodations.

26.     Without any accommodations, Mr. Murillo was unable to meet the expectations of his mentor teachers and they resigned as his mentors approximately one month into his student teaching clinical course in early 2013.

27.     Subsequently, Mr. Murillo's National University clinical practice faculty supervisor also abruptly resigned as his supervising faculty member and Defendants terminated Mr. Murillo's 2013 student teaching clinical course.

28.     Defendants required Mr. Murillo to participate in the remedial Candidate Assistance Program before enrolling in the student teaching clinical practice course again. Mr. Murillo was required to complete 40 hours of classroom teaching of high school students during the Candidate Assistance Program (CAP) in August and September of 2013.

29.     To aid graduate students who are struggling with student teaching clinical

practice, CAP incorporates more structured guidance to lesson planning and clear constructive feedback from mentor teachers. Mr. Murillo performed well under CAP's more structured approach to student teaching clinical practice that included clear instruction to student teachers, which was similar to some of Mr. Murillo's needed accommodations. Mr. Murillo successfully completed his required CAP hours.

30.   In January 2014, Mr. Murillo was eventually placed as a student teacher under a mentor teacher at San Fernando High School in Los Angeles Unified School District and assigned a supervising National University clinical practice faculty member[1].

31.   Again in 2014, Mr. Murillo attempted to discuss reasonable accommodation with his supervising NU clinical practice professor, disclosing his disability and requesting accommodations. However, similar to his previous experience, NU did not immediately engage in the interactive process to provide accommodations.

32.   During the first few weeks of his 2014 student teaching placement, Mr. Murillo received consistently positive evaluations with constructive feedback from his clinical practice professor, Suzanne Woods, based on observations of instructional periods in which Mr. Murillo taught a lesson. Overall, Ms. Woods scored Mr. Murillo well on the evaluation rubric after each observed teaching session.

33.   In early February, the curriculum of the master teacher required Mr. Murillo to read a short story aloud to the classroom. However, due to Mr. Murillo's disabilities, it is difficult for him to read aloud fluidly and also to comprehend what he has just read aloud to transition into a discussion of the text or other lesson plan. Mr. Murillo attempted to address this issue with the NU clinical practice professor.

34.   Mr. Murillo was also concerned that he was not receiving other needed accommodations, such as clear instructions and feedback regarding lesson planning,

---

[1] Mr. Murillo was originally assigned to work in the classrooms of two master teachers, however, due to scheduling conflicts, he and NU determined he could complete his clinical studies working with just one master teacher.

COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

his instructional presentations and interactions with students. Furthermore, Mr. Murillo was struggling to prepare his lesson plans without a computer that he could use both during preparation outside of class time, as well as during instructional periods.

35.    Due to his concerns regarding needed accommodations, as well as a reasonable modification to the lesson plans requiring reading texts aloud, Mr. Murillo contacted National University's Student Accessibility Services (SAS) office seeking assistance to get the accommodations he required. Throughout early February 2014 Mr. Murillo worked with the SAS office to request the reasonable accommodations he needs to participate in student teaching on an equal playing field as other candidates in the program.

36.    In response to Mr. Murillo's request for accommodations for his student teaching clinical studies, the SAS office contacted his supervising clinical practice professor regarding Mr. Murillo's needs, and also put Mr. Murillo working in contact with NU's Assistive Technology and Alternative Media Coordinator.

37.    On or about February 18, 2014, National's SAS office confirmed that it had discussed Mr. Murillo's request of accommodations with his supervising clinical practice professor.

38.    Just days after the SAS office intervened on his behalf, Mr. Murillo received for the first time that semester a negative evaluation from Ms. Woods for his scheduled instructional period on or about February 21, 2014. For the first time, the clinical studies professor scored Mr. Murillo with the lowest marks across all categories on the evaluation rubric and included negative comments. Again, for the first time Ms. Woods' comments suggested that she had serious concerns regarding Mr. Murillo's performance as a teacher. His clinical studies professor had not shared any such concerns with Mr. Murillo previously in writing or in person.

39.    Shortly thereafter, on February 23, 2014, Ms. Woods abruptly emailed Mr. Murillo to inform him that she was resigning as his supervising faculty member for clinical studies and that his mentor teacher had also resigned as Mr. Murillo's mentor. The email prohibited Mr. Murillo from returning to the high school classroom

placement and effectively terminated his student teaching clinical studies without warning and before he was provided the benefit of the accommodations he was in the process of requesting. Mr. Murillo was taken by surprise as his earlier evaluations had been positive. As a result, Mr. Murillo experienced severe anxiety, frustration and emotional distress that his clinical studies were again terminated before he could complete the requirements to obtain his teaching credential.

40.    Despite the discrimination and retaliation Mr. Murillo has faced in National University's clinical practice program, he remains dedicated to his vocation as an educator and continues to actively work to develop his instructional skills. After his dismissal from his student teaching placement in 2014, Mr. Murillo successfully completed the foundational requirements for pre-service teacher candidates in the Distinguished Pathway Program offered by the National University Professional Teaching Development Center, which is a professional development program to begin teacher candidates on a trajectory to achieve National Board Certification.

41.    Although Mr. Murillo's clinical studies programs have twice been terminated before he could complete all the Teacher Performance Assessments ("TPAs") required by the California Commission on Teacher Credentialing, he did successfully complete and pass the first two TPAs during the course of his student teaching.

42.    Mr. Murillo continues to persevere and work toward completing his teaching credential. Having successfully satisfied all other requirements, Mr. Murillo is currently working with National University toward completing his final two TPAs to submit to the California Commission on Teacher Credentialing.

43.    Defendants' failure to accommodate Mr. Murillo and retaliate against him, not only delayed him in earning his teaching credential, but also threatened him with the prospect of dismissal from his degree program with a master's degree in education but without obtaining a teaching credential, which was Mr. Murillo's primary objective when he enrolled in the program. Mr. Murillo's struggles to complete clinical studies at National University without accommodations, and his experience with retaliatory

treatment when he attempted to request needed accommodations, have caused him stress, frustration, anger, humiliation, and other severe emotional distress.

44.    In addition to suffering emotionally, as a result of National University's failure to provide the accommodations and academic support needed by Mr. Murillo through his student teaching clinical practice, Defendants effectively delayed his career and impacted his earning capacity, as well as required Mr. Murillo to pay additional tuition.

45.    NU finally engaged in the interactive process with Mr. Murillo after his counsel contacted NU informing Defendant it was violating state and federal law by failing to provide reasonable accommodations and modifications. While some accommodations have been provided to Mr. Murillo to assist him complete his teaching credential program, he continues working with NU representatives to ensure he receives the reasonable modifications and accommodations he needs to complete the program.

## FIRST CLAIM FOR RELIEF
### Violation of Title III of the Americans with Disabilities Act
### 42 U.S.C. §§ 12181 *et seq.*
### By Plaintiff Against All Defendants

46.    Plaintiff re-alleges and incorporates by reference all previous paragraphs.

47.    Congress enacted the Americans with Disabilities Act upon finding, among other things, that "society has tended to isolate and segregate individuals with disabilities" and that such forms of discrimination continue to be a "serious and pervasive social problem."  42 U.S.C. §12101(a)(2).

48.    In response to these findings, Congress explicitly stated that the purpose of the ADA is to provide "a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities" and "clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities." 42 U.S.C. §12101(b)(1)-(2).

49.    Title III of the ADA provides in pertinent part:   "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."  42 U.S.C. §12182.

50.    The U.S. Department of Justice's regulations implementing Title III require a public accommodation to "make reasonable modifications in policies, practices, or procedures, when the modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the public accommodation can demonstrate that making the modifications would fundamentally alter the nature of the goods, services, facilities, privileges, advantages, or accommodations." 29 C.F.R. § 36.302 (a).

51.    The U.S. Department of Justice's regulations implementing Title III also require a public accommodation to "take those steps that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the public accommodation can demonstrate that taking those steps would fundamentally alter the nature of the goods, services, facilities, privileges, advantages, or accommodations being offered or would result in an undue burden, i.e., significant difficulty or expense."  28 C.F.R. § 36.303 (a).

52.    At all relevant times, all Defendants have been a "public accommodation" or a person who "owns, leases (or leases to), or operates a place of public accommodation" within the meaning of Title III of the ADA and offered educational services, programs, and activities, to members of the public who qualify and pay for its programs.

53.    At all relevant times, Mr. Murillo has been an individual with a disability within the meaning of Title III of the ADA and met the eligibility requirements for the receipt of the aids, benefits, services, programs, and activities of Defendants at issue in this action.

54.   Plaintiff is informed, believes, and based thereon alleges that Defendants could have reasonably provided all aids, benefits, services, programs, and activities in an accessible manner and on an equal basis to allow him a full, meaningful, and substantially equal opportunity to participate in Defendants' program.

55.   As a direct and proximate result of the aforementioned acts, Plaintiff has suffered humiliation, hardship, anxiety, indignity, and other significant mental and emotional anguish.

56.   Pursuant to 42 U.S.C. § 12205, Plaintiff is entitled to his reasonable attorneys' fees and costs.

## SECOND CLAIM FOR RELIEF

**Violation of Americans with Disabilities Act Anti-Retaliation Provisions**
**42 U.S.C. §§ 12203 *et seq*.**
**By Plaintiff Against All Defendants**

57.   Plaintiff re-alleges and incorporates by reference all previous paragraphs.

58.   The Anti-Retaliation Provisions of the ADA provide: "No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a); *see also* 28 C.F.R. § 36.206 (a).

59.   Furthermore, the ADA prohibits adverse actions that interfere with the rights of an individual under the ADA, providing in pertinent part: "It shall be unlawful to coerce, intimidate, threaten or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed … any right granted or protected by this chapter." 42 U.S.C. § 12203(b); *see also* 28 C.F.R. § 36.206 (b).

60.   The U.S. Department of Justice's implementing regulations further provide illustrations of such prohibited activities, including:

a.   "[c]oercing an individual to deny or limit the benefits, services, or

advantages to which he or she is entitled under the Act or this part," 28 C.F.R. §36.206 (c)(1);

b. " … interfering with an individual with a disability who is seeking to obtain or use the goods, services, facilities, privileges, advantages, or accommodations of a public accommodation," 28 C.F.R. §36.206 (c)(2); and

c. "[r]etaliating against any person because that person has participated in any investigation or action to enforce the Act or this part." 28 C.F.R. §36.206 (c)(4).

61.     At all relevant times, Defendants' educational services, programs, and activities have been a "public accommodation" within the meaning of Title III of the ADA and, thus, required by Title III to provide students with disabilities reasonable accommodations needed for such students to access and participate in such programs.

62.     At all relevant times, Mr. Murillo has been an individual with a disability within the meaning of Title III of the ADA and met the eligibility requirements for the receipt of the aids, benefits, services, programs, and activities of Defendants at issue in this action.

63.     Mr. Murillo requested reasonable accommodations from Defendants for his student teaching program and sought assistance from the SAS office in communicating and coordinating his accommodation needs with Defendants' clinical studies faculty.

64.     However, after the SAS office contacted Defendants' clinical studies professor and/or faculty or administrators regarding Mr. Murillo's accommodation needs, Defendants' clinical studies faculty and/or administrators unilaterally terminated Mr. Murillo's student teaching assignment, without warning or further engaging in the interactive process.

65.     Plaintiff is informed, believes, and based thereon alleges that Defendants terminated his student teaching clinical program as a result of his requests for the provision of reasonable accommodations.

66.     As a direct and proximate result of the aforementioned acts, Plaintiff has

COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

suffered humiliation, hardship, anxiety, indignity, and other significant mental and emotional anguish.

67.     Pursuant to 42 U.S.C. § 12205, Plaintiff is entitled to his reasonable attorneys' fees and costs.

## THIRD CLAIM FOR RELIEF

### Violation of Section 504 of the Rehabilitation Act of 1973

### 29 U.S.C. § 794

### By Plaintiff Against All Defendants

68.     Plaintiff re-alleges and incorporates by reference all previous paragraphs.

69.     Section 504 of the Rehabilitation Act ("Section 504") provides in pertinent part: "[N]o otherwise qualified individual with a disability . . . shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance. . . ." 29 U.S.C. §794.

70.     The U.S. Department of Justice's regulations implementing Section 504 provide in relevant part:

a.     "A recipient  [of federal funds] shall make such modifications to its academic requirements as are necessary to ensure that such requirements do not discriminate or have the effect of discriminating, on the basis of handicap, against a qualified handicapped applicant or student…Modifications may include changes in the length of time permitted for the completion of degree requirements, substitution of specific courses required for the completion of degree requirements, and adaptation of the manner in which specific courses are conducted." 45 C.F.R. § 84.44 (a).

b.     " No qualified handicapped student shall, on the basis of handicap, be excluded from participation in, be denied the benefits of, or otherwise be subjected to discrimination under any academic, research, occupational training, …financial aid, … or other postsecondary education aids, benefits, or services

..." 45 C.F.R. § 84.43 (a).

71.    At all relevant times, Mr. Murillo has been a qualified individual with a disability (also referred to as a "handicapped person") within the meaning of Section 504 and met the eligibility requirements for the receipt of the aids, benefits, services, programs, and activities of Defendants.

72.    At all times relevant to this action, all Defendants were recipients of federal financial assistance within the meaning of Section 504.

73.    Through their acts and omissions described herein, Defendants have violated Section 504 and its implementing regulations.

74.    Plaintiff is informed, believes, and based thereon alleges that Defendants committed the acts and omissions alleged herein with intent, deliberate indifference, and/or reckless disregard of Plaintiff's rights.

75.    As a direct and proximate result of the aforementioned acts, Plaintiff has suffered humiliation, hardship, anxiety, indignity, and significant mental and emotional anguish.

76.    Pursuant to 29 U.S.C. § 794a, Plaintiff is entitled to damages and reasonable attorneys' fees and costs incurred in bringing this action.

## FOURTH CLAIM FOR RELIEF
### Section 504 of the Rehabilitation Act of 1973
### 29 U.S.C. § 794a
### By Plaintiff Against All Defendants

77.    Plaintiff re-alleges and incorporates by reference all previous paragraphs.

78.    The Rehabilitation Act provides in pertinent part: "The remedies, procedures and rights set forth in title VI of the Civil Rights Act of 1964 … shall be available to any person aggrieved by any act of failure to act by any recipient of Federal assistance …under section 794 of this title."

79.    As such, the Ninth Circuit has interpreted the Rehabilitation Act to incorporate the Anti-Retaliation Provisions set forth in Title VI of the Civil Rights Act

of 1964, permitting a plaintiff under Section 504 to also bring claims for retaliation under 34 C.F.R. § 100.7(e) based on a defendant's adverse action for the purpose of interfering with rights protected under Section 504. *Barker v. Riverside County Office of Educ.,* 584 F.3d 821, 825 (9th Cir. 2009); *see also* 34 C.F.R. § 100.7(e) and 34 C.F.R. § 104.61.

80.   The U.S. Department of Education's regulations implementing Title VI of the Civil Rights Act of 1964 provides: "No recipient or other person shall intimidate, threaten, coerce, or discriminate against any individual for the purpose of interfering with any right or privilege secured by section 601 of the Act or this part, or because he has made a complaint, testified, or participated in any manner in an investigation, proceeding or hearing under this part." 34 C.F.R. § 100.7(e).

81.   Through their acts and omissions described herein, Defendants have violated Section 504 and its implementing regulations, including the Anti-Retaliation Provisions incorporated by reference into Section 504.

82.   Plaintiff is informed, believes, and based thereon alleges that Defendants committed the acts and omissions alleged herein with intent, deliberate indifference, and/or reckless disregard of Plaintiff's rights.

83.   As a direct and proximate result of the aforementioned acts, Plaintiff has suffered humiliation, hardship, anxiety, indignity, and significant mental and emotional anguish.

84.   Pursuant to 29 U.S.C. § 794a, Plaintiff is entitled to damages and reasonable attorneys' fees and costs incurred in bringing this action.

**FIFTH CLAIM FOR RELIEF**

**Unruh Civil Rights Act**

**Cal. Civ. Code §§ 51 *et seq.***

**By Plaintiff Against All Defendants**

85.   Plaintiff re-alleges and incorporates by reference all previous paragraphs.

86.   California's Unruh Civil Rights Act provides:

> All persons within the jurisdiction of this state are free and
> equal, and no matter what their . . . disability [or] medical
> condition, are entitled to the full and equal accommodations,
> advantages, facilities, privileges, or services in all business
> establishments of every kind whatsoever.
>
> Cal. Civ. Code § 51(b).

87.   Violation of a right protected by the ADA also constitutes a violation of the Unruh Civil Rights Act. Cal. Civ. Code § 51(f).

88.   At all relevant times, all Defendants were, owned, and/or operated a "business establishment" within the meaning of the Unruh Act.

89.   Through their acts and omissions described herein, Defendants have denied Plaintiff full and equal accommodations, advantages, facilities, privileges, or services by discriminatorily failing to provide reasonable accommodations for Plaintiff's disability or medical condition, and by retaliating against Plaintiff when he sought these accommodations.

90.   Plaintiff is informed, believes, and based thereon alleges that a motivating reason for Defendants' discriminatory and retaliatory conduct was Plaintiff's disability or medical condition and his request for accommodations.

91.   By virtue of the acts and omissions alleged herein, Defendants have, with intent, deliberate indifference, and/or reckless disregard, failed to provide Plaintiff with full and equal accommodations, advantages, facilities, privileges, and/or services, and retaliated against Plaintiff due to Plaintiff's disability and medical condition, and as such, have violated the Unruh Act.

92.   As described herein, Plaintiff was harmed by the resulting delay in his completion of Defendants' teacher credentialing program and delay in his career, as well as his subsequent emotional distress, and Defendants' discriminatory and retaliatory conduct were substantial factors in causing this harm.

93.   As a direct and proximate result of the aforementioned acts, Plaintiff has suffered actual damages including but not limited to lost income, lost earning capacity,

out of pocket costs, humiliation, hardship, anxiety, indignity, and significant mental and emotional anguish.

94.   Defendants are liable for each and every violation of the Unruh Act for Plaintiff's actual damages, including emotional distress, and any amount that may be determined by the court, up to a maximum of three times the amount of actual damage, including emotional distress, but in no case less than $4,000 per violation. Plaintiff is also entitled to reasonable attorneys' fees and costs. Cal. Civ. Code § 52(a).

## SIXTH CLAIM FOR RELIEF
### Negligence & Negligence Per Se
### By Plaintiff Against All Defendants

95.   Plaintiff re-alleges and incorporates by reference all previous paragraphs.

96.   At all relevant times, Defendants owed a duty of due care to Plaintiff.

97.   By their acts and omissions as alleged herein, Defendants violated the ADA, Section 504, and the Unruh Act and breached their duty of due care to Plaintiff.

98.   Defendants' violations of law proximately caused, and were a substantial factor in causing, Plaintiff's damages as alleged herein. Such damages were reasonably foreseeable to Defendants.

99.   Plaintiff's damages resulted from an occurrence, the nature of which the violated statutes and regulations were designed to prevent.

100.  At all relevant times, Plaintiff has belonged to the class of persons for whose protection the statutes and regulations were adopted.

101.  Plaintiff is entitled to an award of damages in an amount according to proof as a result of Defendants' conduct, as alleged herein.

## SEVENTH CLAIM FOR RELIEF
### Intentional Infliction of Emotional Distress
### By Plaintiff Against All Defendants

102.  Plaintiff re-alleges and incorporates by reference all previous paragraphs.

---

103.  Defendants' failure to provide needed accommodations to Mr. Murillo, a student with a known disability, and their retaliatory actions against Mr. Murillo terminating his student teaching clinical practice when sought the provision of these necessary accommodations was outrageous.

104.  Defendants acted with reckless disregard of the probability that Plaintiff would suffer emotional distress as a result of their discriminatory and retaliatory actions.

105.  As a result of Mr. Murillo's struggles without accommodations and Defendants' retaliatory actions when he attempted to exercise his rights, Mr. Murillo suffered severe emotional distress.

106.  Defendants' violations of law proximately caused, and were a substantial factor in causing, Plaintiff's severe emotional distress as alleged herein. Such damages were reasonably foreseeable to Defendants.

107.  Plaintiff is entitled to an award of damages in an amount according to proof as a result of Defendants' conduct, as alleged herein.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff prays for relief as follows:

1.     For a declaration that Defendants' conduct ad alleged herein constituted discrimination and retaliation under the Americans with Disabilities Act, the Rehabilitation Act, and the California Unruh Civil Rights Act;

2.      For an order requiring Defendants to implement the reasonable accommodations Mr. Murillo needs to complete their teacher credentialing program;

3.     For statutory and compensatory damages as permitted by law and according to proof at trial, including treble actual damages pursuant to Cal. Civ. Code § 52(a);

4.     Interest on compensatory damages at the legal rate from the date of injury, pursuant to California Civil Code § 3291;

5.     Attorneys' fees and costs of suit as permitted by law, pursuant to 42 U.S.C.

1  § 12188, 42 U.S.C. § 12205, 29 U.S.C. § 794a, Cal. Civ. Code § 52(a), and Cal. Code

2  Civ. Proc. § 1021.5, and

3          6.      Such other relief as the Court finds just and proper.

4

5  Dated:  February 23, 2016                           SURISA RIVERS LAW OFFICE

6                                                      KNAUF ASSOCIATES

7                                                      _____

8                                                      By: Christopher H. Knauf
                                                       Attorneys for Plaintiff

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

_____

- 21 -

COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

1

## **DEMAND FOR JURY TRIAL**

2        Plaintiff hereby demands a jury trial.

3

4   Dated:  February 23, 2016                    SURISA RIVERS LAW OFFICE

5                                               KNAUF ASSOCIATIES

6

7                                               By: Christopher H. Knauf

8                                               Attorneys for Plaintiff

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES